No. 109,512

In the Matter of SUSAN L. BOWMAN, *Respondent*.

(310 P.3d 1054)

Opinion filed October 18, 2013.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Susan L. Bowman*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Susan L. Bowman, of Seneca, an attorney admitted to the practice of law in Kansas in 1987.

On September 28, 2012, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on December 4, 2012. On December 11, 2012, the respondent also filed a motion to accept answer out of time. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on January 10, 2013. Respondent's motion to accept answer out of time was granted at the hearing.

The hearing panel determined that respondent violated KRPC 1.3 (2012 Kan. Ct. R. Annot. 454) (diligence); 1.16 (2012 Kan. Ct. R. Annot. 558) (termination of representation); 3.3(a)(1) (2012 Kan. Ct. R. Annot. 582) (candor toward tribunal); 8.1(b) (2012 Kan. Ct. R. Annot. 634) (failure to respond to lawful demand for information from disciplinary authority); 8.4(c) (2012 Kan. Ct. R. Annot. 643) (engaging in conduct involving misrepresentation); 8.4(d) (engaging in conduct prejudicial to the administration of justice); and Kansas Supreme Court Rule 207(b) (2012 Kan. Ct. R. Annot. 329) (failure to cooperate in disciplinary investigation).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

### "FINDINGS OF FACT

. . . .

"7.  Tyson Langdon died intestate as a result of a car accident on October 18, 2008. He was 22 years old. He was survived by his minor daughter Noralee A. Langdon, his father Ted Langdon, and his mother Elma Ball. Tyson Langdon's estate primarily included his vehicle and an insurance claim related to his vehicle. Additionally, Tyson Langdon had a life insurance policy for $30,000 through his employment. Noralee Langdon was the sole beneficiary of the life insurance policy, thus, the proceeds of the life insurance policy were not estate assets.

"8.  On November 20, 2008, Martin W. Mishler, counsel for Mr. Langdon, filed a petition for letters of administration in Nemaha County District Court. Mr. Langdon sought appointment as administrator of his son's estate.

"9.  On December 17, 2008, Gordon R. Olson, counsel for Ms. Ball, filed an answer to the petition seeking transfer of the proceedings to Shawnee County and seeking Ms. Ball's appointment as the sole administrator of the estate. That same day, Mr. Olson filed a petition for appointment of administrator and issuance of letters of administration.

"10.  On January 28, 2009, Magistrate Judge Deiter appointed the Respondent to serve as guardian *ad litem* for Noralee Langdon. According to the appointment order, the Respondent was to represent the best interests of the child at all stages of the proceeding. The Respondent remains as Noralee Langdon's guardian *ad litem*. Despite the Respondent's official role as guardian *ad litem*, the Respondent never filed a claim with the insurance company to obtain the $30,000 in life insurance proceeds in which Noralee Langdon was the sole beneficiary.

"11.  On February 18, 2008, Mr. Olson filed a proof of claim for $1,600.00 for attorney fees incurred in representing Tyson Langdon on criminal matters, a revenue matter, and a paternity action.

"12.  On February 18, 2009, the court appointed the Respondent to serve as administrator of the estate. On March 6, 2009, the Respondent filed an oath of administrator and agreed to 'faithfully and impartially . . . discharge all of the duties' as administrator. Finally, the Respondent provided a $600,000 bond for her services as administrator. On March 6, 2009, the court issued letters of administration to the Respondent.

"13.  On March 10, 2009, Popkess Mortuary, Inc., filed a petition for allowance and classification of demand, seeking payment of the funeral expenses associated with Tyson Langdon's funeral.

"14.  On March 27, 2009, Mr. Langdon filed a petition for allowance and classification of demand for expenses related to Tyson Langdon's funeral as well as attorney fees and the grave marker.

"15.   The court conducted a hearing on May 13, 2009. At that time, the court authorized the Respondent to pay claims to Popkess Mortuary, Gordon Olson, and Mr. Langdon. The Respondent failed to pay the claims to Popkess Mortuary, Gordon Olson, and Mr. Langdon.

"16.   Also on May 13, 2009, the court authorized the administrator to sell Tyson Langdon's vehicle. The Respondent sold Tyson Langdon's vehicle for $2,300.00.

"17.   For an extended time period, the Respondent took no action in Tyson Langdon's estate case.

"18.   Mr. Langdon repeatedly called the Respondent to learn the status of the estate matter. The Respondent did not routinely take Mr. Langdon's telephone calls nor did she return Mr. Langdon's calls. [Footnote: For a period of time, Mr. Langdon was represented by counsel. However, on April 22, 2011, counsel for Mr. Langdon was permitted to withdraw. Following Mr. Mishler's departure from the case, the Respondent did not adequately communicate with Mr. Langdon.]

"19.   On April 18, 2011, the court scheduled an administrative review hearing for May 11, 2011. The court directed the Respondent to appear at the hearing and to provide an accounting through April 30, 2011.

"20.   Prior to the May 11, 2011, hearing, Mr. Mishler and Mr. Olson were allowed to withdraw.

"21.   On May 11, 2011, the Respondent filed an interim accounting. The accounting reported a distribution from the estate to Popkess Mortuary in the amount of $8,503.54 and to the Mishler Law Office in the amount of $1,166.15. [Footnote: The exhibits presented to the Hearing Panel do not include a copy of a claim made by Mr. Mishler nor do the exhibits include a court order authorizing the Respondent to pay Mr. Mishler's claim.] No other distributions were made. At that time, the estate consisted of $3,430.31.

"22.   At the May 11, 2011, hearing, the court allowed the Respondent to withdraw as administrator after she paid Mr. Langdon's first-class claim in the amount of $957.00 and filed a final accounting. The court appointed the Morrill & Janes Bank and Trust Company as successor administrator.

"23.   Between May, 2011, and December, 2011, Michael Riley, Trust Services Division President of Morrill & Janes Bank and Trust Company, repeatedly contacted the Respondent in an attempt to obtain the Respondent's file. When Mr. Riley was able to reach the Respondent, the Respondent assured Mr. Riley that she would get him the file. The Respondent did not provide the file to Mr. Riley.

"24.   On December 23, 2011, Mr. Riley notified the court that the Morrill & Janes Bank and Trust Company was unable to assume the responsibilities as successor administrator because [of] the Respondent's lack of cooperation. Mr. Riley informed the court that he would seek leave to resign the appointment unless the Respondent provided the necessary information and documents. Again, the Respondent failed to provide Mr. Riley with her file.

"25.   Because the Respondent continued to fail to cooperate, on February 3, 2012, Mr. Riley filed a motion asking the court to rescind the order appointing

Morrill & Janes Bank and Trust Company as successor administrator. On March 9, 2012, the court granted the motion.

"26.  The court scheduled a case management conference for May 10, 2012. The court sent notice of the hearing to the Respondent at her office address.

"27.  On May 10, 2012, the Respondent failed to appear at the case management hearing. The court called the Respondent and reached her by telephone at her home. The following exchange occurred at the outset of the hearing:

'(Mrs. Bowman appeared by telephone.)
'THE COURT: Susan?
'MRS. BOWMAN: Yes.
'THE COURT: This is Judge Weingart.
'MRS. BOWMAN: Yes.
'THE COURT: We're on the—We're in court in the Estate of Tyson Langdon, Case No. 08 PR 58, and we are on the record.
'MRS. BOWMAN: Okay.
'THE COURT: Are you not coming to the hearing?
'MRS. BOWMAN: Um, I didn't have that on my calendar.
'THE COURT: You didn't get a notice from our office?
'MRS. BOWMAN: I—I did not see one.
'THE COURT: We sent it, on April 16.
'MRS. BOWMAN: Okay.
'THE COURT: So you're saying you didn't know of this hearing today?
'MRS. BOWMAN: No, no.
'THE COURT: All right. Well, looking at the file, it appears that the last order of Judge Deiter was that you would be allowed to resign as administrator.
'MRS. BOWMAN: Yes.
'THE COURT: However, prior to being released, you were to pay the first-class claim of Ted Langdon in the amount of $957. Did you do that?
'MRS. BOWMAN: Um—(pause).
'THE COURT: Hello?
'MRS. BOWMAN: I believe so. Yes.
'THE COURT: You did do that?
'MRS. BOWMAN: I—I—(sighs).
'THE COURT: Okay.
'MS. BALL: No.
'THE COURT: It hasn't been done yet?
'MR. LANGDON: Absolutely not.
'MRS. BOWMAN: No, he has not received that?
'THE COURT: Family says no.
'MRS. BOWMAN: Okay.
'THE COURT: Then—That was the first part of your requirement. The second part of your requirement said you were to submit a final accounting.
'MRS. BOWMAN: (no response).

'THE COURT: Okay?

'MRS. BOWMAN: Yes.

'THE COURT: You filed an interim accounting, and you haven't filed a final accounting.

'MRS. BOWMAN: Right.

'THE COURT: Okay? All right. And then, upon those conditions, then, the Court would accept your resignation. Okay? But you're not released—You still have liability until you're released. So you have—You have to get this done.

'MRS. BOWMAN: Okay.

'THE COURT: Okay? How soon can you have all this done?

'MRS. BOWMAN: Um—(pause). Seven days?

'THE COURT: That'll be fine. We'll expect the fi—the payment of Mr. Langdon and proof of payment to Mr. Langdon's claim, and a final accounting of, of the account filed with the Court within seven days. Okay?

'MRS. BOWMAN: Okay.

'THE COURT: —we'll expect that done in seven days, okay?

'MRS. BOWMAN: Okay.

'THE COURT: Thank you.

'MRS. BOWMAN: I will do that.

'THE COURT: All right. Bye.'

"28.   On May 21, 2012, the Respondent filed a final accounting in Tyson Langdon's estate case. In the final accounting, the Respondent noted that she paid Mr. Langdon's first-class claim for funeral expenses.

"29.   Eventually, the Respondent provided the court with a copy of her file relating to Tyson Langdon's estate. The court provided the file to Mr. Riley and the Morrill & Janes Bank and Trust Company is now the successor administrator. Mr. Riley has resolved many of the issues involved in the estate matter created by the Respondent's lack of diligence. Additionally, Mr. Riley worked with the Kansas Insurance Department and was able to obtain the $30,000 in life insurance proceeds which will ultimately benefit Noralee Langdon. It appears that the Respondent has taken no action to establish a conservatorship or trust to hold the life insurance proceeds for the benefit of Noralee Langdon. Mr. Riley expects to close the estate in approximately 30 days.

### "Disciplinary Complaints

"30.   On January 18, 2012, Mr. Langdon filed a disciplinary complaint against the Respondent. On January 23, 2012, the Disciplinary Administrator wrote to the Respondent, enclosed a copy of Mr. Langdon's complaint, and directed the Respondent to provide a written response to the complaint within 15 days. The Respondent failed to provide a written response to Mr. Langdon's initial complaint. As a result, the Disciplinary Administrator docketed the complaint for investigation. The Disciplinary Administrator again directed the Respondent to provide a written response to Mr. Langdon's complaint. Again, the Respondent failed to provide a written response to the complaint.

"31.  On January 20, 2012, Mr. Riley filed a disciplinary complaint against the Respondent. On January 26, 2012, the Disciplinary Administrator docketed Mr. Riley's complaint against the Respondent for investigation. The Disciplinary Administrator directed the Respondent to provide a written response to Mr. Riley's complaint. The Respondent failed to provide a written response to Mr. Riley's complaint.

"32.  John D. Gatz, chairperson of the Kansas Bar Association's Ethics and Grievance Committee appointed Darrell E. Miller, an attorney, to investigat[e] the two complaints. Mr. Miller contacted the Respondent by letter and by telephone. The Respondent failed to respond to Mr. Miller's requests for information.

### "Conclusions of Law

"33.  The Respondent stipulated that she violated the Kansas Rules of Professional Conduct as detailed in the formal complaint. The Hearing Panel accepts the Respondent's stipulation and concludes as a matter of law that the Respondent violated KRPC 1.3, KRPC 1.16, KRPC 3.3, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207. The Hearing Panel does not accept the Respondent's stipulation that she violated KRPC 1.4, as detailed below.

"34.  In the formal complaint, the Disciplinary Administrator alleged that the Respondent violated KRPC 1.3, KRPC 1.4, and KRPC 1.16. All three of these rules, require an attorney-client relationship. The Respondent was not acting as an attorney for Noralee Langdon nor was she acting as attorney for the estate. The Respondent was appointed to serve as a guardian *ad litem* and as an administrator for the estate.

"35.  However, because the Respondent stipulated to all the rules alleged in the formal complaint, the question of whether these rules apply in this situation was not discussed in detail at the hearing on the formal complaint. For guidance on this subject, the Hearing Panel has reviewed *In re Williamson*, 260 Kan. 569, 918 P.2d 1302 (1996). In that case, the Supreme Court disbarred Walter C. Williamson for misconduct which occurred in connection with his appointment as executor of his grandmother's estate. The Respondent's misconduct included a lack of diligence, in violation of KRPC 1.3. While the Supreme Court did not specifically discuss whether an attorney serving as an executor or an administrator of an estate has an attorney-client relationship as required by KRPC 1.3, the Supreme Court concluded that Mr. Williamson violated KRPC 1.3. Accordingly, based upon *In re Williamson*, the Hearing Panel concludes that it is proper to consider KRPC 1.3. KRPC 1.4 and KRPC 1.16, however, require a closer look.

### "KRPC 1.3

"36.  Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The court appointed the Respondent to serve as a guardian *ad litem* for Noralee Langdon and as administrator of Tyson Langdon's estate.

"37.  The Respondent failed to execute her duties as administrator diligently. The Respondent failed to timely pay the debts of the estate, the Respondent failed

to timely file accountings with the court, and the Respondent failed to close the estate.

"38. The order appointing the Respondent as guardian *ad litem* required the Respondent to represent the best interests of the child. The Respondent failed and continues to fail to execute her duties as guardian *ad litem* diligently. To date, the Respondent has taken no action to ensure that Noralee Langdon receives the proceeds from the life insurance policy purchased by her father through his employment. From the record before the Hearing Panel, it appears that the Respondent has taken no action as guardian *ad litem.*

"39. Because the Respondent failed to act with reasonable diligence and promptness both as administrator of Tyson Langdon's estate and as guardian *ad litem* for Noralee Langdon, and based upon her stipulation, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"KRPC 1.4

"40. KRPC 1.4(a) provides:

'(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

'(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.'

"41. In this case, the Respondent had two separate roles. First, the court appointed the Respondent to serve as guardian *ad litem* for Noralee Langdon. Whether the Respondent provided adequate communication to Noralee Langdon was not developed at the hearing. Accordingly, the Hearing Panel cannot conclude that the Respondent violated KRPC 1.4 with regard to her role as guardian *ad litem.*

"42. Second, the court appointed the Respondent to serve as the administrator of Tyson Langdon's estate. Clearly, the Respondent failed to adequately communicate with Mr. Langdon and Mr. Riley. However, neither Mr. Langdon nor Mr. Riley is the estate. The estate has no person with which to communicate. The Hearing Panel believes that technically it cannot conclude that the Respondent violated KRPC 1.4 for her failure to properly communicate with Mr. Langdon [or] Mr. Riley. [Footnote: It is important to note, however, regardless of whether the Respondent violated KRPC 1.4 in this regard, the Respondent should have provided adequate communication to Mr. Langdon and Mr. Riley. Further, the Respondent's failure to communicate with Mr. Langdon and Mr. Riley amounts to a violation of KRPC 8.4(d) as detailed below.]

"KRPC 1.16

"43. KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving

reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

"44. Again, the Respondent was not acting in an attorney-client relationship in this matter. In the opinion of the Hearing Panel, however, it appears that a discussion of KRPC 1.16 is more like the discussion of KRPC 1.3 and less like the discussion of KRPC 1.4. Consideration of KRPC 1.16 is appropriate in this case because the Respondent owes a duty to the estate to properly terminate her relationship with the estate. Accordingly, the Hearing Panel concludes that it is proper to consider KRPC 1.16. [Footnote: The Respondent's role as guardian *ad litem* is not relevant to the discussion of KRPC 1.16, as the Respondent continues in that role. The Hearing Panel is concerned that the Respondent continues in that role as it appears that the Respondent has taken no action to protect the financial interests of Noralee Langdon.]

"45. The Respondent executed an oath of administrator—swearing to faithfully discharge her duties as administrator. The Respondent failed to faithfully discharge her duties as administrator.

"46. On May 11, 2011, the court agreed to allow the Respondent to withdraw as administrator of Tyson Langdon's estate, if (and only if) she paid Mr. Langdon's first-class claim and provided a final accounting. The Respondent failed to do so. A year later, the court reminded the Respondent of her obligation to pay Mr. Langdon's claim and file a final accounting. The Respondent finally paid Mr. Langdon's first-class claim and filed a final accounting. By failing to timely take the steps as required by the court to terminate her role as administrator of the estate, the Respondent violated KRPC 1.16.

"47. Further, the Respondent failed to provide Mr. Riley with a copy of the estate file. The court agreed to replace the Respondent as administrator of the estate with the Morrill & Janes Bank and Trust Company. However, for Mr. Riley of the Morrill & Janes Bank and Trust Company to be able to step into that role, he needed to have a copy of the estate file. The Respondent's failure to provide Mr. Riley with a copy of Tyson Langdon's estate file amounts to an additional violation of KRPC 1.16.

"KRPC 3.3

"48. KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal.' The Respondent made a false statement of material fact to the Court when she falsely stated to the court that she had made a claim to the insurance company for the benefit of Noralee Langdon. Because the Respondent provided false information to the Court, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a)(1).

"KRPC 8.4(c)

"49. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when she informed the court that she had made a claim with the insurance company for the benefit of Noralee Langdon when she had not done so. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"50. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The Respondent engaged in conduct that was prejudicial to the administration of justice when she failed to properly communicate with Mr. Langdon and Mr. Riley and when she failed to comply with court orders—the order to provide a copy of the estate file to Morrill & Janes Bank and Trust Company, the order to appear in court in May, 2012, and the order to pay Mr. Langdon's first-class claim and file a final accounting. Thus, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 8.4(d).

"KRPC 8.1 and Kan. Sup. Ct. R. 207(b)

"51. Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

Kan. Sup. Ct. R. 207(b). The Disciplinary Administrator and Mr. Miller repeatedly informed the Respondent that a written response to the initial complaints were required. The Respondent never provided written responses to the initial complaints filed in this case. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) by failing to provide written responses to the two complaints filed in this case.

"*American Bar Association*

"*Standards for Imposing Lawyer Sanctions*

"52. In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the po-

tential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"53. *Duty Violated*. The Respondent violated her duty to the estate and to her ward to provide diligent representation. The Respondent also violated her duty to the estate [to] properly terminate her relationship with the estate. Additionally, the Respondent violated her duty to the legal system, the legal profession, and the public to maintain her personal integrity. Finally, the Respondent violated her duty to the legal profession to cooperate in disciplinary investigations.

"54. *Mental State*. The Respondent knowingly violated her duties.

"55. *Injury*. The Respondent's misconduct caused extreme delay in handling a simple estate. Additionally, the Respondent's misconduct nearly caused Noralee Langdon to lose her claim to $30,000 in life insurance proceeds. Accordingly, the Hearing Panel concludes that the Respondent caused actual injury to the legal profession and the legal system and serious potential injury to Noralee Langdon.

"Aggravating and Mitigating Factors

"56. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"57. *Dishonest or Selfish Motive*. The Respondent's motive in this case is difficult to ascertain. Certainly, the Respondent was not honest with the court in her discussion regarding the payment of Mr. Langdon's first-class claim. Because the Respondent engaged [in dishonest conduct] the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty.

"58. *A Pattern of Misconduct*. For several years, the Respondent failed to take action to get the estate closed. Accordingly, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"59. *Multiple Offenses*. The Respondent committed multiple rule violations. The Respondent violated KRPC 1.3, KRPC 1.16, KRPC 3.3, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207. Accordingly, the Hearing Panel concludes that the Respondent committed multiple offenses.

"60. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The Respondent failed to provide written responses to the complaints in this case. The Respondent was repeatedly instructed to provide written responses. The Respondent's repeated failure to provide written responses to the complaint amounts to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

"61. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the Respondent to practice law in the State of Kansas in 1987. At the time of the misconduct, the Respondent has been practicing law for more than 20 years.

"62. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"63. *Absence of a Prior Disciplinary Record.* The Respondent has not previously been disciplined.

"64. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The Respondent suffers from depression. The Respondent stated that her depression contributed to the misconduct.

"65. *The Present Attitude of the Attorney as Shown by Her Cooperation During the Hearing and Her Full and Free Acknowledgment of the Transgressions.* The Respondent fully cooperated during the hearing and admitted the facts and the rule violations as alleged in the formal complaint.

"66. In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.42    Suspension is generally appropriate when:
    (a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
    (b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

### "Recommendation

"67. The Deputy Disciplinary Administrator recommended that the Respondent be suspended from the practice of law for a period of twelve months. The Deputy Disciplinary Administrator further recommended that the Respondent be required to appear at a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219, following the period of suspension.

"68. Counsel for the Respondent recommended that the Respondent be censured by the Kansas Supreme Court and that the censure be published in the Kansas Reports.

"69. The Respondent's misconduct can be classified into three separate types of misconduct. First, the Respondent failed to diligently do what was necessary to complete her assignments as administrator of Tyson Langdon's estate and guardian *ad litem* for Noralee Langdon. Second, the Respondent was reckless in her statement to the court that she had paid Mr. Langdon. She either knew she had not paid Mr. Langdon and said that she did or she did not know whether she paid Mr. Langdon and said that she did. Either way, the Respondent did not properly provide truthful, accurate, and relevant information to the court. And third, the Respondent failed to comply with court orders. She had been ordered by the court to provide a copy of her file to Mr. Riley. She failed to do so.

Additionally, the court ordered her to appear at a hearing in May, 2012. She failed to do so. Finally, the court ordered her to pay Mr. Langdon's first-class claim and file a final accounting. She failed to do so for more than a year and after another hearing was convened because she failed to do so.

"70.    To date, the Respondent has not taken sufficient steps to ensure that her problems with diligence are a part of her past. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended for a period of 12 months.

"71.    The Hearing Panel further recommends that upon receipt of this report, the Respondent immediately develop a workable, substantial, and detailed plan of probation and provide a copy of the plan of probation to the Disciplinary Administrator. The plan of probation must be at least two years in length and must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court. If the Disciplinary Administrator believes that the proposed plan of probation is insufficient, the Respondent shall resolve any deficiencies noted by the Disciplinary Administrator. The Respondent's plan of probation must include practice supervision and appropriate mental health treatment and medication review.

"72.    The Hearing Panel further recommends that the Respondent immediately put the plan of probation into effect by complying with each of the terms and conditions of the probation plan. The Hearing Panel also recommends that prior to the oral argument before the Supreme Court, the Respondent provide an affidavit to the Disciplinary Administrator and the Clerk of the Appellate Courts that details how the Respondent is in compliance with the terms and conditions of the proposed probation plan.

"73.    If the Respondent complies with paragraphs 70 and 71 above to the satisfaction of the Disciplinary Administrator, the Hearing Panel recommends that after six months' suspension, the Supreme Court suspend the imposition of the remaining six months' suspension and place the Respondent on probation without the need of a reinstatement hearing pursuant to Kan. Sup. Ct. R. 219.

"74.    If the Respondent fails to comply with paragraphs 70 and 71 above, the Hearing Panel recommends that the full 12-month suspension be imposed and that the Respondent be required to appear at a reinstatement hearing pursuant to Kan. Sup. Ct. R. 219.

"75.    Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if

they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2012 Kan. Ct. R. Annot. 350). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which she filed an answer; she filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2012 Kan. Ct. R. Annot. 368). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 1.3 (2012 Kan. Ct. R. Annot. 454) (diligence); 1.16 (2012 Kan. Ct. R. Annot. 558) (termination of representation); 3.3(a)(1) (2012 Kan. Ct. R. Annot. 582) (candor toward tribunal); 8.1(b) (2012 Kan. Ct. R. Annot. 634) (failure to respond to lawful demand for information from disciplinary authority); 8.4(c) (2012 Kan. Ct. R. Annot. 643) (engaging in conduct involving misrepresentation); 8.4(d) (engaging in conduct prejudicial to the administration of justice); and Kansas Supreme Court Rule 207(b) (2012 Kan. Ct. R. Annot. 329) (failure to cooperate in disciplinary investigation) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be suspended for a period of 12 months and be required to appear at a reinstatement hearing pursuant to Supreme Court Rule 219 (2012 Kan. Ct. R. Annot. 398).

The hearing panel recommended that respondent be suspended for a period of 12 months; that she immediately develop and implement a workable, substantial, and detailed plan of probation of at least 2 years in length and provide a copy of the plan of probation

to the Disciplinary Administrator; and that the plan of probation include practice supervision and appropriate mental health treatment and medication review. Further, the hearing panel recommended that prior to oral argument to this court, respondent provide an affidavit to the Disciplinary Administrator and Clerk of the Appellate Courts detailing how respondent was in compliance with the terms and conditions of the proposed probation plan.

A majority of the court concludes that respondent should be suspended from the practice of law for 12 months effective as of the date of this opinion. Respondent may be reinstated to the practice of law after 6 months provided a reinstatement hearing is conducted under Rule 219, wherein both the hearing panel and the office of the Disciplinary Administrator approve her proposed probation plan. Further, the respondent shall provide to the hearing panel and the office of the Disciplinary Administrator a written report from a licensed psychiatric, psychological, or social work professional approved by the Kansas Lawyers Assistance Program that includes an opinion that there are no current impediments to respondent's ability to practice law. The reinstatement panel must satisfy itself from the information in that report and any other evidence submitted to it that respondent has successfully addressed the problems that led to her misconduct and suspension. If reinstatement is recommended by a panel after a hearing conducted under Rule 219, the remainder of respondent's 12-month suspension from the practice of law shall be suspended, and she shall be allowed to practice while on probation for an additional 24 months. Provided her probation is completed successfully, she will be released from the suspended portion of her suspension.

A minority of the Court would impose the discipline level recommended by the Office of the Disciplinary Administrator: that the respondent be suspended for a period of 12 months and be required to appear at a reinstatement hearing pursuant to Supreme Court Rule 219.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Susan L. Bowman be suspended from the practice of law in the state of Kansas, in accord-

ance with Supreme Court Rule 203(a)(2) (2012 Kan. Ct. R. Annot. 294), for 12 months effective as of the date of this opinion. Respondent may be reinstated to the practice of law after 6 months provided: (1) a reinstatement hearing is conducted under Rule 219, wherein both the reinstatement panel and the office of Disciplinary Administrator approve her proposed probation plan; (2) the respondent provides to the panel and the office of the Disciplinary Administrator a written report from a licensed psychiatric, psychological, or social work professional approved by the Kansas Lawyers Assistance Program which includes an opinion that there are no current impediments to respondent's ability to practice law; and (3) the panel satisfies itself from the information in that report and any other evidence submitted to it that respondent has addressed the problems that led to her misconduct and suspension. If reinstatement is recommended by a panel after a hearing conducted under Rule 219, the remainder of respondent's 12-month suspension from the practice of law shall be suspended, and she shall be allowed to practice while on probation for an additional 24 months. Assuming successful completion of the probation, respondent will be released from the suspended portion of her suspension.

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2012 Kan. Ct. R. Annot. 397) and Rule 219.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.